DONNELLY BRICK CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7314.   Promulgated April 25, 1927.

A tunnel brick kiln constructed for the burning of common brick, although it had never before been used for that purpose, *held* to be a capital asset, and no part of its cost is deductible as expense.

*D. P. O'Connor, Esq.,* and *A. F. Hall, C. P. A.,* for the petitioner.
*Jos. K. Moyer, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for 1920 in the amount of $11,974.30.   The deficiency arises from the action of the Commissioner in disallowing as a deduction claimed by the petitioner as an ordinary and necessary expense, a portion of the cost of a tunnel kiln which it installed in 1920.

FINDINGS OF FACT.

The petitioner is a Connecticut corporation, with its principal place of business at New Britain.   It is engaged in the manufacture and sale of common brick.

After some investigation the petitioner decided to install at its plant a tunnel kiln for the burning of common brick.   While tunnel kilns were being successfully used, the petitioner was the pioneer in using this method of burning common brick.   It was not known whether the tunnel kiln could be successfully used for this purpose and some experimenting was necessary to be done (1) as to the proper way to load the cars so that the brick would burn uniformly; (2) as to a fuel to place with the brick on the car; (3) as to car tops that would stand up for a reasonable length of time; (4) as to combustion chambers that would stand up; (5) as to a dependable fuel to use for heating the kiln, and a proper heat range; (6) as to the proper kind of pyrometers to be used.

The construction of the kiln was begun in August, 1920, and completed in May, 1921.   Coincident with the beginning of the construction of the kiln the petitioner suspended operations which were resumed after the completion thereof in May, 1921.

It was necessary that the petitioner turn out 48,000 bricks daily in order to operate profitably and it was understood that the kiln which was being installed had that capacity, although the contract entered into with the American Dressler Tunnel Kiln Co. contained no provision as to the capacity of the kiln.

After the kiln was completed in 1921, it was found that it would not turn out 48,000 bricks daily, although this could not be determined until after the kiln was lighted and put in use in May, 1921.

As a result of this condition certain parts of the kiln were replaced and the kiln enlarged. The major part of the replacement took place in 1923 when twelve additional burners were installed. The petitioner kept an account on its books headed "Tunnel Kiln Account," which showed charges of $47,036.23 at the end of 1920, and the total cost of constructing the kiln contracted for with the American Dressler Tunnel Kiln Co. was $55,385.19. After the changes had been made and the kiln had been enlarged in 1923, the total cost was approximately $135,000, at which time it was in condition to produce 48,000 burned bricks per day.

In 1923 it was decided to install oil-burning apparatus in place of apparatus for burning gas. A portion of the kiln was torn away and additions made in order to get the correct soaking zone or heat curve and to increase the capacity. The following parts were taken out and discarded:

| | |
|---|---:|
| Expansion boxes, gas ducts and labor | $14,594.03 |
| Stack discarded | 735.34 |
| Gas producers | 3,500.00 |
| Gas ducts | 637.50 |
| Gas ducts | 365.75 |
| Gas ducts, labor | 500.00 |
| Expansion boxes, one-half | 657.50 |
| Fire brick | 216.09 |
| Fire brick | 949.60 |
| One-half the cost of blueprints | 3,500.00 |
| Total | 25,655.81 |

A total of $1,590.40 was expended in 1920 for fire brick, silicate, carborundum, cilocel and combustion chambers.

The petitioner in 1920 did not charge any part of the expenditures in connection with the kiln to capital account, but subsequently charged approximately $24,000 to capital account and charged off the balance of the expenditures made in 1920 to expenses.

The kiln was not used in 1920 and none of the parts or any of the material were taken out and scrapped in that year and it was not known until the kiln was first used in 1921 that any of the parts or material would have to be removed and replaced. Most of the parts were removed in 1923, when the kiln was materially altered and the heating system changed to use oil instead of gas.

The petitioner claimed a deduction from gross income in the amount of $24,929.76 in 1920, with respect to the expenditures made during that year in building and installing the kiln. The respondent has disallowed any deduction with respect to such expenditures.

OPINION.

TRAMMELL: The petitioner contends that it is entitled to a deduction in 1920 with respect to approximately one-half of the expendi-

tures made in that year in building and installing the tunnel kiln, upon the ground that such expenditures were in the nature of experimental expenses.

While it is true that the tunnel brick kiln had never before been used in burning common brick and the petitioner was the first to use it for that purpose, this fact does not establish the right to the deduction claimed. The petitioner acquired a capital asset. During 1920 the kiln was only partly completed and it was not known during that year that any of the parts or material used would ever have to be abandoned prior to the exhaustion of their normal useful life. This fact was not ascertained in 1920, and most of the parts and material were not scrapped until 1923 or subsequent thereto. The parts when acquired had an expected life of at least more than a year.

We see no reason, under the facts in this case, to depart from the ordinary rule relating to the acquisition of capital assets. When capital assets become useless for the purpose for which acquired and are scrapped or abandoned, deductions may be allowed with respect thereto, or if it can be foreseen in advance that assets will have to be scrapped and abandoned because they can not be used in the business, a reasonable deduction may be allowed. The petitioner, however, in 1920 had no knowledge that the parts or material entering into the kiln would have to be scrapped or abandoned or replaced on account of not being suitable for the purposes for which acquired or installed.

The petitioner contends that the tunnel kiln was like a machine and not a building, but this to our mind is not material. It was, in any event, a capital asset, the cost of which the taxpayer was entitled to have returned to it over the life thereof. While the evidence shows that the installation of this kiln was in the nature of an experiment by the petitioner and it was not known whether it would work successfully or not, this is not sufficient, in our opinion, to entitle the petitioner to the deduction claimed as ordinary and necessary expense. The expenditure was for the acquisition of capital assets. The fact that the capital asset had never been tried before for the particular purpose for which it was acquired by the petitioner does not change its character to an expense item. The acquisition of such property was not an ordinary, current, annual occurrence. It was acquired for use over a period of years.

*Judgment will be entered for the respondent.*